# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. )    Case No. 10-CR-0173-001-CVE
)
CLAYTON JOSIAH VADEN, )
)
Defendant. )

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Vaden's Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirators' Statement and Brief in Support (Dkt. # 46); Motion to Dismiss due to Speedy Trial Violation (Dkt. ## 47, 54); Motion in Limine: Audio Recordings (Dkt. # 48); Motion to Suppress Statement(s) (Dkt. # 49); Defendant Vaden's Motion & Brief to Disclose Evidence of Specific Instances of Conduct to Be Offered Pursuant to Fed. R. Evid. 608(b) (Dkt. # 50). The government has responded to each of defendant's motions and defendant has filed a reply (Dkt. # 62) in support of his motion to dismiss on speedy trial grounds. The Court held an evidentiary hearing on October 27, 2011, and the government presented the testimony of three witnesses.

## I.

On September 22, 2010, the Sand Springs Police Department attempted to stop a vehicle with an expired tag, and the driver refused to stop and initiated a high speed pursuit by the police. The driver, later identified as Clayton Josiah Vaden, fled on foot and was arrested as he attempted to enter a residence at 518 North Main Street in Sand Springs, Oklahoma. Officers searched Vaden's person and discovered that he was wearing a bullet-proof vest. Vaden also had .45 caliber

ammunition, .22 caliber ammunition, and 12 gauge ammunition, as well as a shoulder holster for a firearm. Vaden was booked on state charges at the David L. Moss Correctional Center and he was released on bond. The State of Oklahoma filed criminal charges against Vaden in Tulsa County District Court as a result of this incident.

On October 27, 2010, the Osage County Sheriff's Office (Sheriff's Office) arrested Vaden after receiving a report of a potential robbery. A caller notified the Sheriff's Office that two men driving a gray pick-up truck stopped at her house and asked about doing yard work for the resident. After leaving the caller's house, they drove to a neighbor's house and pulled into the driveway. Sergeant Steven Talburt of the Sheriff's Office responded to the call. When he arrived, he saw two men inside the residence. The Sheriff's Office determined that the pick-up truck was stolen and they contacted a SWAT team to participate in the arrest at the scene. Sheriff's deputies found a 12 gauge shotgun and various ammunition in the stolen truck, and the suspects initiated a standoff with the SWAT team from inside the house. After one and a half hours of negotiation, one suspect voluntarily surrendered and advised police that Vaden was still inside the house and was armed. The SWAT team entered the house through the garage and found various firearms and ammunition lying in the garage. It appeared that Vaden was attempting to steal these items. After a search of the home, Sheriff's deputies found Vaden in the attic and took him into custody. The arresting officers were required to use pepper spray when arresting Vaden, and Vaden had to be decontaminated before he could be transported to the Osage County Jail. Sheriff's Office chief criminal investigator Charles Cartwright decontaminated Vaden, and asked Vaden if anyone else was present in the house and if there were any weapons in the house. Cartwright testified that he asked these questions out of concern for officer safety. Vaden remained silent, and he did not respond to Cartwright's

questions or invoke his <u>Miranda</u> rights.  Talburt transported Vaden to the Osage County Jail, and he testified that Vaden slept during the 45 minute drive to the jail.  The Osage County District Attorney subsequently filed state criminal charges against Vaden.

Talburt and Investigator Vaughn of the Sheriff's Office interviewed Vaden on October 28, 2010.  Talburt advised Vaden of his <u>Miranda</u> rights.  Vaden stated that he understood his <u>Miranda</u> rights and that he wished to speak to law enforcement officials.  Dkt. # 55-2, at 1.  Vaden also signed a written <u>Miranda</u> waiver.  <u>Id.</u> at 2.  Near the end of the interview, the following exchange between Talburt and Vaden occurred:

> Q:     I don't buy - I don't - I don't buy that you told us the real story.
>
> A:     Already didn't believe me yesterday, don't believe me today, so when - you're never gonna believe me.
>
> Q:     Okay, well, you told us a different story today than you told us yesterday.
>
> A:     No, I didn't.

<u>Id.</u> at 29.  Talburt testified he did not interview Vaden on October 27, 2010, and that he did not know of any interview that took place before October 28, 2010.  He also testified that any suggestion of a prior story in this exchange was an interview tactic designed to test whether Vaden would change his story.

On November 2, 2010, a federal grand jury returned an indictment relating to the September 22, 2010 incident (Dkt. # 2), charging Vaden with possessing a firearm after former felony conviction in violation of 18 U.S.C. § 922(g)(1).  The United States Marshal for the Northern District of Oklahoma lodged a detainer against Vaden with the Osage County Jail, in care of the Osage County Sheriff's Office.  On November 3, 2010,  Agent Josh Petree of the Bureau of Alcohol, Tobacco, Firearms, and Explosives  attempted to interview Vaden at the Osage County Jail.  Petree

advised Vaden of his <u>Miranda</u> rights. Vaden stated that he had already told his story to Sheriff's deputies and he did not want to repeat it. Petree testified that he did not take Vaden into custody on the pending federal charge, because he did not have a warrant and it is not his practice to remove a prisoner from state custody, even if there is federal charge against the prisoner. On December 7, 2010, the grand jury returned a superseding indictment to add the October 27, 2010 incident (Dkt. # 5), charging Vaden and Joshua Hurd with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (count one) and charging Vaden with two counts of possessing a firearm after former felony conviction in violation of 18 U.S.C. § 922(g)(1) (counts two and three). The United States Marshal lodged a second detainer against Vaden. The Osage County criminal proceedings were not dismissed but were repeatedly delayed, and Vaden remained in state custody while awaiting trial in Osage County. Dkt. # 47-1. Vaden's preliminary hearing in state court did not occur until September 6, 2011. <u>Id.</u> at 5. The evidence does not show if a trial date for the state charges has been set.

Assistant United States Attorney Joel-lyn McCormick filed a petition for writ of habeas corpus ad prosequendum (Dkt. # 31) on September 16, 2011, and the petition was granted on September 19, 2011. Also on September 19, 2011, Vaden wrote a letter to Assistant Federal Public Defender Stephen Greubel claiming that he was being held in the Osage County Jail and he had not received notice of federal charges against him, even though Petree spoke to him about the federal charges and he knew that a federal detainer had been lodged against him. Dkt. # 54-1. The parties have stipulated that Greubel received the letter and that Greubel did not forward the letter to the United States Attorney's Office for the Northern District of Oklahoma or to the Court. On

September 22, 2011, Vaden appeared in this Court for his initial appearance and counsel was appointed for him.  Dkt. # 37.

## II.

Defendant has filed numerous pretrial motions.  He asks the Court to dismiss the indictment for statutory and constitutional speedy trial violations, because the government allowed him to remain in state custody after the indictment and superseding indictment were filed.  Dkt. ## 47, 54. He claims that any statements he made at the October 28, 2010 interview should be suppressed due to the appearance that he was improperly interviewed on October 27, 2010.  Dkt. # 49.  He requests a pretrial hearing on the admissibility of co-conspirator statements.  Dkt. # 46.  He also asks the Court to exclude audio recordings or transcripts of audio recordings of phone calls from the Osage County Jail and the October 28, 2010 interview, and he seeks an order compelling the government to disclose if it will use evidence under Fed. R. Evid. 608(b).  Dkt. ## 48, 50.

Motion for James Hearing (Dkt. # 46)

Defendant requests a pretrial hearing to determine the admissibility of co-conspirator statements.  Dkt. # 46.  The government asserts that a pretrial hearing is unnecessary and any co-conspirator statements are provisionally admissible under Fed. R. Evid. 801(d)(2)(E) without a pretrial hearing.  Under Rule 801(d)(2)(E), a statement is not considered hearsay if the court finds that "(1) a conspiracy existed; (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy."  United States v. Eads, 191 F.3d 1206 (10th Cir. 1999) (quoting United States v. Caro, 965 F.2d 1548, 1557 (10th Cir. 1992)).  For Rule 801(d)(2)(E) to apply, the government must establish the existence of a conspiracy at some point in its case-in-chief, or the

statements must be excluded.  United States v. Katz, 705 F.2d 1237 (10th Cir. 1983).  The Court "can only admit coconspirator statements if it holds a *James* hearing [before trial] or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267 (10th Cir. 2007) (quoting United States v. Owens, 70 F.3d 1118 (10th Cir. 1995)).  A district court may rely on the statements and observations of other coconspirators to support its finding that a conspiracy existed.  Owens, 70 F.3d at 1124-25.  If a coconspirator statement is admissible under Fed. R. Evid. 801(d)(2)(E), the requirements of the Confrontation Clause of the Sixth Amendment are also satisfied.  United States v. Molina, 75 F.3d 600, 603 (10th Cir. 1996).

The government opposes defendant's motion and there is no Tenth Circuit precedent requiring a pretrial hearing to determine the admissibility of co-conspirator statements.  Dkt. # 57. The Tenth Circuit has stated that it has a "preference" for a district court to hold a pretrial hearing. United States v. Gonzalez-Montoya, 161 F.3d 643 (10th Cir. 1998).  However, the Tenth Circuit has clearly held that this is a preference only, and the district court retains discretion to hold a pretrial hearing or permit the government to "connect up" the statements to a conspiracy at trial.  United States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994).  This Court requires, and the parties have been advised, that the government must lay a proper foundation for admitting co-conspirator statements by offering proof of the conspiracy before seeking to admit any co-conspirator statements. Therefore, defendant's motion for a James hearing is denied.

Motion to Dismiss for Statutory and Constitutional Speedy Trial Violations (Dkt. ## 47, 54)

Defendant argues that he was not promptly transferred into federal custody after the filing of federal charges as required by the Interstate Agreement on Detainers (IAD), and that has caused a violation of his statutory and constitutional rights to a speedy trial. Dkt. ## 47, 54. The government responds that defendant's arrest on state charges did not trigger his statutory speedy trial clock and that defendant's constitutional right to a speedy trial has not been violated.

The federal government and 48 states have enacted the IAD to regulate the transfer of prisoners awaiting charges in another state. Congress originally passed the IAD in 1970 due to a lengthy history of problems between state governments when transferring prisoners facing charges in another jurisdiction. United States v. Mauro, 436 U.S. 340, 349-50 (1978). The IAD provides "cooperative procedures" for the transfer of prisoners between members states to resolve charges outstanding against a prisoner in another jurisdiction. 18 U.S.C. App. 2, § 2, Art I. The federal government is treated as a single state under the IAD and the IAD "has no application if a prisoner in federal custody in one federal judicial district faces another federal indictment in a different federal judicial district." United States v. Walling, 974 F.2d 140, 141 (10th Cir. 1992). By its plain terms, the IAD applies to transfers between individual states or a state and the federal government.

The IAD has two primary purposes: "(1) to minimize interference with the participation in programs of prisoner treatment and rehabilitation of persons serving sentences in one jurisdiction who have untried charges pending against them in another jurisdiction and (2) to expedite trial of such pending charges." United States v. Harris, 566 F.2d 610, 612 (8th Cir. 1977). If the IAD applies, the Supreme Court has stated that the IAD "basically (1) gives a prisoner the right to demand a trial within 180 days; and (2) gives a State the right to obtain a prisoner for purposes of

trial, in which case the State (a) must try the prisoner within 120 days of his arrival, and (b) must not return the prisoner to his 'original place of imprisonment' prior to that trial." Alabama v. Bozeman, 533 U.S. 146, 151 (2001). If a prisoner is returned to the sending state before final disposition of the charges in the receiving state and the prisoner has not waived his right to a speedy trial, the charges in the receiving state must be dismissed. Id. at 154-55 (rejecting Alabama's argument that "trivial" violation of the IAD's antishuttling provisions did not require dismissal of charges after Alabama returned the defendant to the sending state). The 180 day period under the IAD does not begin to run until a prisoner's request for a speedy trial is delivered to the court and prosecutor in the receiving state. Fex v. Michigan, 507 U.S. 43 (1993); United States v. Daily, 488 F.3d 796 (8th Cir. 2007).

The Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., also considers the effect of a criminal defendant's custody in another jurisdiction. When the federal government files criminal charges against a person who is currently incarcerated in another jurisdiction, the attorney for the government must:

> (A) undertake to obtain the presence of the prisoner for trial; or
>
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

18 U.S.C. § 3161(j)(1). The person with custody of the defendant "shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial." Id. at § 3161(j)(2). The prisoner, through his custodian, may demand a speedy trial and the government must ensure the prisoner's presence in the appropriate jurisdiction if such a demand is made. Id. However, a violation of § 3161(j) does not require dismissal of the indictment under the Speedy Trial Act and a prisoner must

assert his speedy trial right under the Sixth Amendment of the United States Constitution to obtain a dismissal. United States v. Jackson, 473 F.3d 660, 664 (6th Cir. 2007); United States v. Dawn, 900 F.2d 1132, 1135 (7th Cir. 1990); United States v. Valentine, 783 F.2d 1413, 1416 (9th Cir. 1986).

In this case, defendant did not assert his rights under the IAD and he did not deliver a request for a speedy trial of his federal charges to this Court or the United States Attorney. The evidence shows that Vaden was or should have been aware of the pending federal charges, but he did not request transfer to federal custody. Dkt. # 54-1, at 1. Thus, the IAD is not an independent basis to dismiss the criminal charges against defendant.

Defendant argues that his rights under § 3161(b) were violated because the grand jury did not return an indictment within 30 days of his arrest by state law enforcement officials.[1] Under § 3161(b), an information or indictment must be filed within 30 days of the defendant's arrest on such charges. However, a state arrest does not trigger the a defendant's speedy trial clock in federal court. United States v. Allen, 986 F.2d 1354, 1356 (10th Cir. 1993). The Speedy Trial Act clock for the bringing of an indictment does not begin to run until a defendant is placed in federal custody. United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990). Vaden was held in state custody following his arrest on October 27, 2010, and his statutory speedy trial clock did not begin to run until he was taken into federal custody. The indictment and superseding indictment were filed while

---

[1]     Speedy Trial Act defenses are normally premised on alleged violations of the 70 day period found in 18 U.S.C. § 3161(c)(1). However, this period is not triggered until the defendant enters an initial appearance and, even if the IAD were violated, a separate violation of § 3161(c)(1) would not usually occur. Defendant concedes that there is no speedy trial violation under § 3161(c)(1), because his trial setting is less than 70 days from the date of his initial appearance in the Court. Dkt. # 47, at 6.

defendant was in state custody, and the charges were pending when he was taken into federal custody. Thus, there was no delay between defendant's "arrest" on the federal charges and the filing of federal charges, and defendant's statutory speedy trial argument is meritless.

Defendant also claims that his Sixth Amendment right to a speedy trial has been violated. The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The right attaches when a defendant is arrested or indicted, and the earlier of the two dates is used for the running of the constitutional speedy trial clock. United States v. Larson, 627 F.3d 1198 (10th Cir. 2010). When considering a Sixth Amendment speedy trial claim, the Court must consider four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant." United States v. Toombs, 574 F.3d 1262, 1274 (10th Cir. 2009).

The Tenth Circuit has established a two-part inquiry for consideration of the length of delay. Delay is presumptively prejudicial if more than one year passes between "accusation and trial." United States v. Selzer, 595 F.3d 1170, 1176 (10th Cir. 2010). However, even if prejudice is presumed, the district court must consider "as one factor among several, the extent to which delay stretches beyond the bare minimum needed to trigger judicial examination." Id. Using September 22, 2010 as the start date for the constitutional speedy trial clock, it will be more than one year from the date of defendant's arrest to his trial on November 21, 2011. However, defendant's conduct and delays in the state court proceedings are largely responsible for any delay in bringing him to federal court for charges stemming from his September 22 and October 27, 2010 arrests. Defendant was released on bond after his September 22, 2010 arrest, and he is charged with committing additional

crimes while on bond. This resulted in additional criminal charges being filed in a separate state court and delayed defendant's prosecution in this Court. See United States v. Abdush-Shakur, 465 F.3d 458 (10th Cir. 2006) ("Delays attributable to the defendant do not weigh against the government."). The proceedings in Osage County could have proceeded in a more expeditious manner, but the Osage County proceedings provided a legitimate basis for the federal prosecutor to delay any attempt to take defendant into federal custody. The Court finds that the government has rebutted any presumption of prejudice to defendant caused solely by the length of the delay in bringing him to trial in federal court.

The second factor the Court must consider is the reason for the delay in prosecuting defendant in this Court. The reason for the delay is the existence of overlapping state and federal charges against defendant. The government states that it refrained from taking defendant into federal custody due to the Osage County proceedings, but it made the decision to secure defendant's presence in federal court when those proceedings "stalled for a reason unknown to the United States."[2] Dkt. # 60, at 10. Defendant argues that the government intentionally delayed these proceedings and the Court should infer that the government did so with the intention of prejudicing the defendant. Dkt. # 47, at 12-13. The mere fact that the government waited a reasonable length

---

[2]     The government states that it has since learned that the Osage County District Attorney took military leave, and the manner of his taking leave delayed many criminal cases. Dkt. # 60, at 11. Some parties claimed that the Osage County District Attorney's Office was "defunct" and that the district attorney abandoned his position. Id. Defendant's case was one of many that has been delayed by the district attorney's conduct. See Dkt. # 63-1 (affidavit of Mike Fisher, Acting District Attorney for Osage County). Defendant asserted at the evidentiary hearing that the reason for the delay of the Osage County proceedings is irrelevant. The Court agrees, but not for the reason urged by defendant. The Court finds the relevant issue to be that there were criminal charges pending and there was some delay in these proceedings, but the reason for the delay is irrelevant to defendant's constitutional speedy trial claim.

of time for the completion of state criminal proceedings does not show that the government acted with intent to prejudice defendant in this case. When it became clear that the Osage County proceedings were not moving toward trial in a timely manner, the government chose to proceed with its case against defendant. There is no evidence that the government intentionally delayed these proceedings and the Court finds that the government has stated a legitimate reason for any delay.

The third factor is whether defendant made a timely assertion of his right to a speedy trial. Defendant concedes that the record contains no evidence that he asserted his right to a speedy trial in federal court while he remained in state custody. Dkt. # 47, at 14. Thus, the Court finds that this factor weighs against defendant.

The fourth factor is the prejudice to defendant resulting from any period of delay. Defendant claims that the delay has resulted in lengthy pretrial incarceration and the delay in taking him into federal custody prevented him from receiving a court-appointed attorney to argue for his release under the Bail Reform Act, 18 U.S.C. § 3141 et seq. Vaden fails to point out that he waived his right to a detention hearing in federal court and it does not appear that he would have been released even if his federal prosecution had moved forward more quickly. Thus, the possibility of federal pretrial release is not a source of prejudice. This also negates any prejudice caused by his state court incarceration while awaiting trial, because he would have been in custody in state or federal court. Defendant also claims that he could have asserted his rights under the federal Speedy Trial Act sooner if he had been brought into federal custody shortly after the filing of the indictment. However, the government was not required to interrupt the state court criminal proceedings, especially considering that defendant was in state custody when the indictment and superseding

indictment were filed. Defendant has identified no prejudice resulting from the period of delay, and this factor does not favor defendant.

Balancing all of the factors, the Court finds that defendant's Sixth Amendment right to a speedy trial has not been violated by any period of pretrial delay, and his motion to dismiss the indictment for alledged statutory and constitutional speedy trial violations is denied.

Motion in Limine to Exclude Prison Audio Recordings (Dkt. # 48)

Defendant asks the Court to exclude audio recordings of phone calls between Vaden and unidentified others and the audio recording of a statement given by Vaden to Osage County law enforcement officials. Defendant argues that the audio recordings or transcripts of the recordings of the phone calls contain statements with no relevance to the case and contain inadmissible hearsay. However, defendant has not produced copies of the recordings or transcripts of the recordings, and he concedes that some statements made during the phone calls and interview are relevant to this case. Dkt. # 48, at 2. Defendant's motion does not identify the evidence to be excluded with enough specificity for a pre-trial ruling on the admissibility of evidence. However, there is no reason to believe that the government will attempt to introduce improper character evidence or hearsay, and defendant's motion suggests that the recordings or transcripts could be redacted to include only relevant evidence. The government states that it will redact the audio recording of Vaden's interview with law enforcement officials to remove references to uncharged crimes, and the government affirmed at the evidentiary hearing that it will confer with defense counsel concerning redaction of the interview recording or transcript. The government also notes that audio recordings of Vaden's phone calls are not improper character evidence or evidence of other bad acts to the extent that Vaden discusses the crimes charged in this case. The audio recordings may be prejudicial

to defendant in the sense that they would harm his case, but there is no basis for defendant's assertion that the audio recordings contain inadmissible character evidence or hearsay or that the recordings are unfairly prejudicial to defendant. The motion in limine is denied with leave to re-urge specific objections if the government seeks to admit the audio recordings or transcripts of the recordings at trial.

Motion to Suppress Statements (Dkt. ## 49)

Defendant claims that he may have given a statement to Osage Sheriff's County deputies on October 27, 2010, and it is unclear if he received a Miranda warning before making this earlier statement. He admits that he received a Miranda warning before making a statement on October 28, 2010, but he argues that his consent may be tainted if he did not receive a Miranda warning before making a prior statement. The government responds that it is not aware of an October 27, 2010 statement by Vaden and will not offer such a statement at trial. Dkt. # 55, at 2. There is evidence that defendant was advised of his rights on October 28, 2010, and the government argues that this statement is admissible.

In Miranda v. United States, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. Under this rule, the court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect. United States v. Patane, 542 U.S. 630 (2004); United States v. McCurdy, 40 F.3d 1111, 1117 (10th Cir. 1994). Once a Miranda warning has been given, police must refrain from interrogating a suspect if he unambiguously invokes his right to silence. Michigan v. Mosley,

423 U.S. 96, 101 (1975). However, a suspect impliedly waives his right to remain silent if he receives a Miranda warning, understands the Miranda warning, and makes an uncoerced statement to police. Berghuis v. Thomkins, 130 S. Ct. 2250, 2262 (2010). The fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a Miranda warning. United States v. Pettigrew, 468 F.3d 626, 636 (10th Cir. 2006). The Miranda exclusionary rule requires only that the court exclude any "unwarned statement" itself. Oregon v. Elstad, 470 U.S. 298, 307 (1985). Even if police obtain a statement from a suspect in violation of Miranda, this does not taint a subsequent warned confession or statement if the statement was voluntarily made. Elstad, 470 U.S. at 309; Pettigrew, 468 F.3d at 635.

The government has produced a transcript of defendant's October 28, 2010 statement. The transcript shows that Talburt advised defendant of his Miranda rights, and defendant orally and in writing waived his right to remain silent and his right to counsel. Dkt. # 55-2, at 1-2. Defendant argues that he may not have been advised of his Miranda rights during an interview on October 27, 2010 and that subsequent interrogation on October 28, 2010 was improper, but there is no evidence that he was interviewed on October 27, 2010. Quite to the contrary, the testimony of Talburt and Cartwright shows that defendant refused to answer any question following his arrest on October 27, 2010, and there is no evidence that Talburt or Cartwright attempted to interrogate defendant immediately after his arrest. Defendant claims that the transcript of his October 28, 2010 interview shows that Talburt referenced a prior statement by defendant. However, there is no evidence that such a statement was made and the Court finds Talburt's testimony credible that the suggestion that defendant made a prior statement was an interrogation tactic to see if defendant would change his

story. Without evidence of a prior custodial interrogation, defendant cannot establish that the October 28, 2010 interview was tainted due to a prior illegality, and his motion to suppress his October 28, 2010 interview is denied.

Motion for Timely Notice of Fed. R. Evid. 608(b) Evidence (Dkt. # 50)

Defendant asks the Court to order the government to disclose before trial any evidence of specific instances of conduct that may be used to impeach a witness under Rule 608(b). Dkt. # 50. The government responds that it has produced all relevant discovery and that defense counsel did not confer with the government before filing this motion. Dkt. # 58. Local Criminal Rule 12.1(H) requires a party raising a discovery dispute to confer with counsel for the opposing party before filing a motion, and defense counsel did not attempt to confer the government. Defendant's motion is denied due to defense counsel's failure to confer with counsel for the government before filing the motion. At the evidentiary hearing, counsel for the government stated that she would give defendant timely notice of any Rule 608(b) evidence, and defense counsel should work with the government to ensure timely production of this evidence. It also appears that the motion is moot, because defendant provides no basis to show that there is any evidence that would be discoverable under Rule 608(b).

**IT IS THEREFORE ORDERED** that Defendant Vaden's Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirators' Statement and Brief in Support (Dkt. # 46) is **denied**; Motion to Dismiss due to Speedy Trial Violation (Dkt. # 47) is **denied**; Motion in Limine: Audio Recordings (Dkt. # 48) is **denied**; Motion to Suppress Statement(s) (Dkt. # 49) is **denied**; Defendant Vaden's Motion & Brief to Disclose Evidence of Specific Instances of Conduct to Be Offered Pursuant to Fed. R. Evid. 608(b) (Dkt. # 50) is **denied**.

**DATED** this 31st day of October, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT